UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH


**SUE ANN FULTON**
    Plaintiff

**v.**                                                                                                                                                    No. 5:10CV-00124-J

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant


**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Dennis Fentress. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 8 and 9, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on October 5, 2009, by administrative law judge (ALJ) Phylis Pierce. In support of her decision denying Title II benefits, Judge Pierce entered the following numbered findings:

    1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2011.

    2. The claimant has not engaged in substantial gainful activity since April 4, 2006, the alleged onset date (20 CFR 404.1571 et seq.).

    3. The claimant has the following impairments which, in combination, are severe: migraine headaches and depression (20 CFR 404.1520(c)).

    4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, subpart P, Appendix 1, (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she cannot perform highly complex or highly skilled tasks.

6. The claimant is capable of performing all of her past relevant work activity, including work as a secretary, assistant manager/cashier at fast food restaurant and health department clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from April 4, 2006, through the date of this decision (20 CFR 404.1520(f)).

(Administrative Record (AR), pp. 31-35).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential

evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990).

## Discussion

This case was denied at the fourth step of the sequential evaluation process. At step 4, the burden of going forward with evidence, as well as the ultimate burden of proof, of disability remains upon the claimant. In other words, to prevail in this judicial review, the plaintiff must point the court to evidence in the administrative record that she suffers from a medically-determinable physical or mental impairment that would be expected to result in functional limitations that are incompatible with the performance of all past relevant work – both as she actually performed it and as it is generally performed in the national economy. Neither the plaintiff nor this court is qualified to interpret raw medical data in functional terms. Furthermore, the mere diagnosis of an impairment

saying nothing about its severity. Therefore, functional limitations generally must be established by the opinion of at least one acceptable medical source. The magistrate judge concludes that the plaintiff has failed to identify a medical opinion, which the ALJ was obliged to accept, that indicates limitations which would preclude performance of her past relevant work as secretary, assistant manager/cashier at a fast food restaurant, and health department clerk. Therefore, we shall recommend an affirmance of the Commissioner's final decision. The plaintiff's specific contentions shall be considered in turn.

**First argument**

The plaintiff first numbered contention is that "the administrative decision is conflicting in regards to the administrative law judge's completed psychiatric review technique [PRT] form and the administrative law judge's mental residual functional capacity [RFC] assessment" (Docket Entry No. 8, p. 3). PRT findings are relevant at the first and second steps of the sequential evaluation process, and RFC findings are required at step three. See Social Security Ruling (SSR) 96-8p.

Judicial review contemplates a "harmless error" review in which the court will not disturb the ALJ's decision unless her ultimate finding of lack of disability is unsupported by substantial evidence, there is no alternative basis for finding lack of disability, and there is a reasonable probability that a remand to correct the error would result in a claimant-favorable decision. The magistrate judge concludes that, in this case, to the extent there was a genuine "conflict" between the ALJ's PRT findings (i.e., "mild" restriction of activities of daily living; "moderate" difficulties in maintaining social functioning; "mild" difficulties in maintaining concentration, persistence, or pace; and "no" episodes of decompensation, each of extended duration) and her RFC findings

(i.e., "cannot perform highly complex or highly skilled tasks"), there is no indication that the conflict was of case-dispositive significance. Stated somewhat differently, even if the plaintiff has the greatest possible restriction based upon the PRT and RFC findings as a whole (i.e., moderate difficulties in maintaining social functioning <u>and</u> cannot perform highly complex tasks), she has failed to show that these limitations would preclude all past relevant work.

Next, the plaintiff argues that there are two additional "conflicts" in the ALJ's written decision, to-wit:

1. The ALJ found "mild" difficulties in maintaining concentration yet found that the plaintiff's migraine headaches would cause "some" difficulty with concentration (AR, p. 32).

2. The ALJ purported to give "great weight to the opinion of the State Agency physicians, who determined the claimant does not have a severe physical impairment" (AR, p. 34), yet she acknowledged "severe migraine headaches" (AR, p. 31).

The magistrate judge concludes that, from a harmless error perspective, these "conflicts" are insignificant because acceptance of the <u>maximal</u> limitations suggested by the foregoing does not require an ultimate finding of disability.

**Second argument**

The plaintiff second numbered contention is that "the evidence of record would require a finding of disability concerning Ms. Fulton's mental impairments and the administrative law judge's evaluation of Ms. Fulton's mental impairments was erroneous in law and in fact" (Docket Entry No. 8, p. 5). Several of the plaintiff's sub-contentions relate to the ALJ's consideration and weighing of the narrative assessment of licensed clinical psychologist Jeanne Bennett, Psy.D. (AR, pp. 253-260). Dr. Bennett examined the plaintiff at the

6

Commissioner's request on June 16, 2007.

An ALJ's evaluation of the limitations caused by a claimant's mental impairment is often inseparable from the ALJ's view of the claimant's credibility and motivation to work. This follows from the fact that there is an irreducible difference between what a claimant is, for whatever reason, unlikely to attempt and what, if properly motivated, she would likely be capable. Dr. Bennett diagnosed, among other things, chronic pain disorder with psychological features secondary to a general medical condition [i.e., migraine headaches]; depressive disorder, not otherwise specified; and cannabis abuse. The treating neurologist, Patrick Lavin, in turn, opined that the plaintiff's migraine headaches were, in fact, "transformed migraine rebound headache **as a result of medication overuse** *(emphasis by ALJ)*" (AR, p. 33). According to Dr. Bennett (AR, pp. 258-259):

> The inconsistency between [the plaintiff's] reported level of daily activities and her account of inability to function because of migraines suggests factors other than migraine headaches have been involved in her history of unreliable attendance at work (i.e., personality disorder traits). ... Ms. Fulton becomes preoccupied with her physical functioning when she has headaches and this may lead to over-reliance on coworkers or her supervisor to do her job duties and work assignments for her.

In providing a "functional capacities" evaluation, rather than simply stating the limitations caused by the plaintiff's mental impairment, Dr. Bennett separately discusses whether a given functional area is "affected" by the impairment and the degree of limitation "noted." For example, Dr. Bennett "noted" a "marked" limitation with respect to the plaintiff's capacity to respond appropriately to supervision, coworkers, and work pressures.

In light of Dr. Bennett's nuanced and somewhat equivocal findings and the record as a whole, although they acknowledged some "mild" PRT findings, the non-examining state agency program psychologists, Drs. Thompson and Vandivier, concluded that the plaintiff's affective disorder, somatoform disorder, and substance addiction disorder were not "severe" (AR, pp. 262-275

and 332-345). In her written decision, the ALJ gave "some weight" to Dr. Bennett's findings (AR, p. 34) and found that the plaintiff's "severe" depression results in an inability to perform "highly complex or highly skilled tasks."

The plaintiff argues that the foregoing findings were not supported by substantial evidence and did not rise to the level of a complete "function-by-function" RFC as required by SSR 96-8p. The magistrate judge concludes that the plaintiff has failed to show how a function-by-function analysis would have changed the outcome of this case. See also *Delgado v. Commissioner*, 2002 WL 343402 (6th Cir.) (there is no requirement for a special function-by-function assessment by an ALJ apart from a narrative discussion of "how the evidence in the record supports the RFC determination, ... the claimant's ability to perform sustained work-related activities, and ... the resolution of any inconsistencies in the record").

Next, the plaintiff presents the following sub-contentions pertaining to the ALJ's consideration of the treating source opinions:

1. The ALJ stated that the plaintiff's "treating physician, Dr. Turnbo, prescribed hormone replacement therapy and Xanax for her depression, with improvement noted in her symptoms" (AR, p. 33), yet the record reflects that the plaintiff's crying episodes resumed and she was eventually referred to a psychologist, Dr. Kilcoyne (AR, p. 6).

2. The ALJ acknowledged the plaintiff's depression but failed to acknowledge the references to her anxiety contained in the treatment notes of Drs. Turnbo and Kilcoyne.

The magistrate judge concludes that the plaintiff has failed to demonstrate that the foregoing matters required the ALJ to acknowledge additional functional restrictions.

8

Next, the plaintiff accuses the ALJ of "playing doctor"; by not having a medical expert (ME) at the administrative hearing, of effectively pulling the plaintiff's mental restrictions out of thin air; etc. (Docket Entry No. 8, p. 10). As counsel is aware, this court routinely criticizes the Commissioner when there is no support in the administrative record for his assessment of a claimant's mental limitations. However, in light of Dr. Bennett's findings and those of the state agency psychologists, that did not occur in this case.

### Third argument

The plaintiff's third numbered contention is that "the administrative decision failed to properly determine if Ms. Fulton retained the capacity to perform her past relevant work" (Docket Entry No. 8, p. 13). The plaintiff attempts to fault the ALJ for not having a vocational expert (VE) at the hearing in support of her ultimate finding that plaintiff retains the capacity to perform her past relevant work. She focuses upon the ALJ's finding that she cannot perform highly complex or highly skilled tasks and her past work for the county attorney's office in child support enforcement, which was arguably highly skilled. The magistrate judge concludes that there was no reversible error because an inability to perform past relevant work contemplates an inability to perform all past relevant work. There is no indication that the plaintiff's prior jobs of assistant manager/cashier at a fast food restaurant and health department clerk were highly complex. See also *Key v. Commissioner*, 109 F.3d 270, 274 (6th Cir., 1997) ("Since in this case the evidence was such that the burden never shifted to the Commissioner to go forward with the evidence, the ALJ did not err in determining that the testimony of a vocational expert was not necessary").

**Fourth argument**

The plaintiff's fourth and final numbered contention is that "the administrative decision failed to properly evaluate the frequency and the severity of Ms. Fulton's migraine headaches and to follow the requirements of Social Security Ruling 96-7p" (Docket Entry No. 8, p. 14). First, the plaintiff focuses upon that the treatment records of Drs. Turnbo and Lavin, which allegedly "consistently reflected reports of severe headaches, two to three times a week" (p. 15). It is beyond dispute that incapacitating migraines occurring at the frequency reported by the plaintiff to her treating sources would require an ultimate finding of disability if such reports are 1) credible, 2) unrelated to lack of motivation to work, and 3) unrelated to cannabis abuse and/or the "medication overuse" noted by Dr. Lavin and the ALJ (AR, p. 33). However, the evaluation of these factors were properly within the ALJ's province as finder of fact and credibility, and the plaintiff has failed to show an abuse of discretion.

Finally, the plaintiff argues the ALJ's credibility analysis is flawed because it does not comport with the requirement of SSR 96-7p that, in determining a claimant's limitations due to pain and other subjective symptoms, the ALJ should consider, among other things, "the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." The plaintiff points the court to her extensive CVS pharmacy records, which show that she is taking or has taken zonisamide, alprazolam, butorphanol, lamictal, prochlorprazine, fluconazole, prempro, topamax, sulfamethoxazole, tizamedine HCL, nabumetone, maxalt, kepra, nohist, astelin, sertraline, sumatriptan, levaquin, tussionexx, methylprednisolone, nystatin, verapamil, valtrex, seroquel, hydrocodone, lunesta, imitrex, combivent inhaler, and migraine nasal spray (AR, pp. 190-205). In addition, Dr. Bennett noted that the plaintiff

"occasionally uses marijuana and that eases her headaches" (AR, p. 255). According to counsel's memorandum to the ALJ, this medication cocktail "demonstrate[s] her inability to sustain any job on an eight hour a day, five day a week basis" (AR, p. 188). While the plaintiff may have been disappointed by a lack of pharmacological information contained in the ALJ's written rationale, there is evidence that she suffers from "transformed migraine rebound headache **as a result of medication overuse** *(emphasis by ALJ)*" (AR, p. 33). In any event, it was the plaintiff's burden to show, among other things, that 1) the medication regimen, if any, that she maintains is medically necessary, 2) she would not be better served in the long run by attempting to reduce her medications, and 3) she is not simply "doctor shopping," taking medication on an ad hoc basis, experimenting with, and abusing prescription pain medication.

## RECOMMENDATION

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, any party shall have a period of fourteen (14) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each fourteen (14) day period above pursuant to Fed.R.Civ.P. 6(d), for a total of seventeen (17) working days.

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).